UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
TUDOR INSURANCE COMPANY                  )
**Plaintiff**                            )
                                         )
**vs.**                                  )
                                         )
HOYT CORPORATION,          MAGISTRATE JUDGE _____
                                         )
**Defendants**                           )
_____    )

**COMPLAINT FOR DECLARATORY RELIEF
AND CLAIM FOR JURY TRIAL**

**Nature of Action**

RECEIPT # _____
AMOUNT $_____
SUMMONS ISSUED_____
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK. _____
DATE _____

1.  This Complaint is a request for a judgment declaring that certain insurance policies that
    Tudor Insurance Company ("Tudor") issued to defendant, Hoyt Corporation ("Hoyt") do not
    require Tudor to provide defense or indemnity to Hoyt for any costs which Hoyt may incur
    by reason of an action filed against it by Minnie Massucci and Peter Massucci ( the
    "Underlying Action").

**Jurisdiction and Venue**

2.  This Court has jurisdiction over this matter under 28 U.S.C. sec. 1332 in that it arises
    between citizens of different states and the matter in controversy exceeds the sum or value of
    seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

3.  Venue is proper in this district under 28 U.S.C. sec. 1391(a)(2) and (b)(2) as this action
    concerns an insurance policy issued to Hoyt Corporation, which is a Massachusetts
    corporation with a principal place of business in Westport, Massachusetts.

**Parties**

4.  Tudor Insurance Company is a corporation organized and existing under the laws of the State
    of New Hampshire with a principal place of business in Franklin Lakes, New Jersey.

5.  Hoyt Corporation, ("Hoyt") is a Massachusetts corporation with a principal place of business
    at 251 Forge  Road, Westport, Bristol County, Commonwealth of Massachusetts.

**Background**

6. Tudor issued policy number GLO 000-3046, effective 2/20/03-2/20/04 and policy number GLO 000- 3656, effective 2/20/04-2/20/05 to Hoyt (collectively "the Policies"). True and correct copies of the Policies are attached hereto as Exhibit "A" and "B."

7. On or about October 15, 2004, Minnie Massucci ("Massucci") and Peter Massucci brought an action in the Supreme Court for the State of New York, County of New York, entitled <u>Minnie Massucci and Peter Massucci v. A.W. Chesterton Company, et al,</u> Index No. 04-114706 ("the Underlying Action"), which names Hoyt Corporation as a defendant. A true and correct copy of the Complaint in the Underlying Action is attached hereto and Exhibit "C."

8. The Complaint in the Underlying Action alleges the defendants therein, including Hoyt, "manufactured, specified, supplied, sold, distributed, and/or installed asbestos containing products to which [Massucci] was exposed, or was a contractor at a location where the plaintiff was exposed to asbestos, or manufactured, sold and/or installed equipment which had asbestos components or specified such components for operation, or owned or operated jobsites where asbestos containing products or equipment were used and where [Massucci] was thereby exposed to asbestos."

9. The Complaint in the Underlying Action further alleges that Minnie Massucci sustained injuries, including mesothelioma, which was diagnosed on June 26, 2004, and that, "the disease, diseases or injuries from which the plaintiff suffers were directly and proximately caused by [Massucci's] exposure to asbestos and asbestos products which were mined, milled, manufactured, designed, assembled, fabricated, supplied, constructed, processed, packaged, distributed, delivered, purchased, sold and/or installed by the defendants." The Complaint in the Underlying Action further alleges that Peter Massucci sustained a loss of his wife, Minnie Massucci's consortium.

10. The Complaint in the Underlying Action further alleges that Minnie Massucci "sustained exposure [to asbestos] including while working with her husband at his dry-cleaning business from approximately 1950-1977 and while working with her husband performing home renovations, among other exposures" and that upon information and belief the defendants named therein "manufactured, designed, sold, supplied, distributed, relabeled, commingled, applied and/or installed those asbestos containing products and/or equipment with asbestos containing components to which [Massucci] was exposed during [her] employment."

11. The Complaint in the Underlying Action further alleges that the defendants therein, acting in concert, failed to warn Massucci "and those similarly situated, of the known dangers and hazards of using their asbestos containing products... by ... providing substantial assistance and encouragement to one another in their wrongful course of conduct, and/or by expressly or impliedly agreeing not to warn [Massucci] and others similarly situated, of the hazards of said asbestos containing products."

12. The Complaint in the Underlying Action further alleges that the during specified times, Massucci "was exposed to and did inhale and/or ingest asbestos dust, fibers, and particles, which dust, fibers, and particles came from the asbestos products which were contracted for, mined, milled, processed, manufactured, designed, tested, assembled, fashioned, fabricated, packaged, supplied, distributed, delivered, marketed and/or sold" by the defendants therein and that such products and/or equipment were defective.

13. The Complaint in the Underlying Action further alleges that the defendants therein knew or should have known that asbestos products were inherently dangerous to those who used, handled or came into contact with them, and failed to provide proper and adequate warnings and information concerning the dangers of such products, as well as other specified acts and omissions that was negligent, grossly negligent, malicious and wanton, as well as intentional, willful and reckless.

14. Tudor has advised Hoyt that it has no duty to defend or duty to indemnify Hoyt for the claims made in the Underlying Action referenced in paragraph eight (8) based upon the terms and conditions of the Policies.

15. The Policies do not provide coverage for the defense or indemnification of Hoyt for the claims made in the Underlying Action because of applicable and controlling language and exclusions contained in the Policies.

## COUNT I
## NO COVERAGE BY REASON OF THE ASBESTOS EXCLUSION

16. Tudor realleges and incorporates by reference its allegations in paragraphs one (1) through fifteen (15) of this Complaint.

17. The following relevant provisions appear in the Policies:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage, Read the entire policy to determine rights, duties and what is and is not covered.

...

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY**
**DAMAGE LIABILITY**
**1. Insuring Agreement**
  a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit: that may result. But:

    (1) The amount we will pay for damages is limited as described in Section III-Limits of Insurance; and

    (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments-Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

    (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

    (2) The "bodily injury" or "property damage" occurs during the policy period.

c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

18. In addition to the provisions set forth in the preceding paragraph, the Policies include an endorsement, which states as follows:

### ASBESTOS EXCLUSION

This insurance does not apply to any liability for "property damage," "bodily injury," sickness, disease, occupational disease, disability, shock, death, mental anguish and mental injury at any time arising out [of] the manufacture of, mining of, use of, sales of, installation of, distribution of, removal of, encapsulation of or exposure to asbestos products, asbestos fibers or asbestos dust , or any obligation of the insured to indemnify any party because of damages arising out of such "property damage," "bodily injury," sickness, disease, occupational disease, disability, shock, death, mental anguish and mental injury at any time arising out [of] the manufacture of, mining of, use of, sales of, installation of, distribution of, removal of, encapsulation of or exposure to asbestos products, asbestos fibers or asbestos dust.

19. By reason of the foregoing provisions and the Asbestos Exclusion, which was part of the Policies, there is no coverage for indemnity or defense under the Policies for the claims made against Hoyt in the Underlying Action.

20. By reason of the foregoing provisions and the Asbestos Exclusion in the Policies, Tudor lacks any obligation to Hoyt in connection with the claims asserted in the Underlying Action.

## COUNT II
## NO COVERAGE TRIGGERED UNDER THE TUDOR POLICIES

21. Tudor realleges and incorporates by reference its allegations in paragraphs one (1) through twenty (20) of this Complaint.

22. As set forth in paragraph seventeen (17), the Policies contain the following provision:

> ...
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
>> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
>>
>> (2) The "bodily injury" or "property damage" occurs during the policy period.
>> ...

23. In addition to the provisions set forth in paragraphs seventeen (17), eighteen (18), and twenty-two (22), the following relevant provisions appear in the policy:

> SECTION V – DEFINITIONS
> ...
> 3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death, resulting from any of these at any time.
> ...
> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
> ...

24. There is no coverage for indemnity or defense under the Policies for the claims made against Hoyt in the Underlying Action as the Complaint in the Underlying Action does not allege "bodily injury" caused by an "occurrence" and that such "bodily injury" occurred during the period during which the Policies were in effect.

25. By reason of the foregoing provisions, Tudor lacks any obligation to Hoyt in connection with the claims asserted in the Underlying Action.

## COUNT III
## NO COVERAGE FOR EXPECTED OR INTENDED INJURIES

26. Tudor realleges and incorporates by reference its allegations in paragraphs one (1) through twenty-five (25) of this Complaint.

27. In addition to the provisions set forth in paragraphs seventeen (17), eighteen (18), twenty-two (22) and twenty-three (23), the Policies include the following language:

> ...

**2. Exclusions.**

This insurance does not apply to:

a. Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.          This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to          protect persons or property.

...

28. By reason of the foregoing exclusion, which was a part of the Policies, there is no coverage for any damages claimed in the Underlying Action for "bodily injury" which was expected or intended from the standpoint of Hoyt.

WHEREFORE, the plaintiff, Tudor Insurance Company, requests a judgment declaring as follows:

a. That under the Policies, Tudor Insurance Company is not required to provide Hoyt Corporation with a defense to the claims asserted in the Underlying Action;

b. That under the Policies, Tudor Insurance Company is not required to indemnify Hoyt Corporation for the claims made in the Underlying Action;

c. That Tudor Insurance Company has no obligation to Hoyt Corporation in connection with the claims made in the Underlying Action;

d. That Tudor Insurance Company be awarded all other relief allowed by law or in equity which the Court deems appropriate and just.

**THE PLAINTIFF HEREBY CLAIMS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

Dated: Jan. 5, 2005

Tudor  Insurance Company,
By Its Attorneys,

THOMAS B. FARREY III/ 159880
BROOKE P. SELIGER//550947
BURNS & FARREY
446 Main Street, 22nd Floor
Worcester, MA  01608
Telephone No.: (508) 756-6288

Ww539cp.2

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1.     Title of case (name of first party on each side only) __Tudor    Insurance Company v. Hoyt Corporation__

2.     Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

     [ ]    I.      160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

     [ ]    II.     195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
                       740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.     for patent, trademark or copyright cases

     [X]    III.     110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                       315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                       380, 385, 450, 891.

     [ ]    IV.     220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
                       690, 810, 861-865, 870, 871, 875, 900.

     [ ]    V.      150, 152, 153.

3.     Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

    _____

4.     Has a prior action between the same parties and based on the same claim ever been filed in this court?

                               YES [ ]     NO [X]

5.     Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

                               YES [ ]     NO [X]

     If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                               YES [ ]     NO [ ]

6.     Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                               YES [ ]     NO [X]

7.     Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

                               YES [X]     NO [ ]

     A.     If yes, in which division do all of the non-governmental parties reside?

         Eastern Division [X]     Central Division [ ]     Western Division [ ]

     B.     If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

         Eastern Division [ ]     Central Division [ ]     Western Division [ ]

8.     If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

                               YES [ ]     NO [ ]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME _____ Thomas B. Farrey, III, Burns & Farrey

ADDRESS ___ 446 Main Street, Worcester, MA  01608

TELEPHONE NO. 508-756-6288 _____

✎JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Tudor Insurance Company

## DEFENDANTS
Hoyt Corporation

**(b)** County of Residence of First Listed Plaintiff    n/a
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Bristol
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number) 508-756-6288
Thomas B. Farrey, III, Burns & Farrey
446 Main St, Worcester, MA  01608

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 | Federal Question (U.S. Government Not a Party) |
| ☐ 2 | U.S. Government Defendant | ☒ 4 | Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                     and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | |
|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. sec. 1332
Brief description of cause:
Plaintiff seeks a declaration regarding insurance policies

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):    JUDGE                    DOCKET NUMBER

DATE 1/6/05

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

E
X
H
I
B
I
T

A

**COMMERCIAL GENERAL LIABILITY POL.** 

STOCK COMPANY

| No. GLO 000-3046 |
| :-- |
| **NEW** |
| REPLACEMENT OF NUMBER |



# TUDOR
### INSURANCE COMPANY
KEENE, NEW HAMPSHIRE

400 PARSON'S POND DRIVE
FRANKLIN LAKES, NJ 07412-2600

## DECLARATIONS

**Named Insured** and Mailing Address: (No., Street, City, State, Zip Code)

**Hoyt Corporation; Forge Road Realty Trust; Hoyt Manufacturing**
**251 Forge Road**
**Westport, MA 02790**

The named insured is:

☐ Individual
☐ Partnership
☒ Corporation
☐ Other _____

Policy Period: (Mo./Day/Yr.)

From      to      12:01 A.M., standard time at your mailing address shown above.

     **February 20, 2003**      **February 20, 2004**

Business Description: Mfg. of commercial washers and dryers.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

| LIMITS OF INSURANCE | | |
| :-- | :-- | --: |
| General Aggregate Limit (Other Than Products - Completed Operations) | $ | 2,000,000 |
| Products - Completed Operations Aggregate Limit | $ | 2,000,000 |
| Personal and Advertising Injury Limit | $ | 1,000,000 |
| Each Occurrence Limit | $ | 1,000,000 |
| Fire Damage Limit | $ | 50,000 Any One Fire |
| Medical Expense Limit | $ | EXCLUDED Any One Person |

| PREMIUM | | | Rate | | Advance Premium | |
| :-- | :-- | :-- | :-- | :-- | :-- | :-- |
| Classification | Code No. | Premium Basis | Pr/Co | All Other | Pr/Co | All Other |

See Earned Premium and Composite Rate Endorsement (GO-0011).

Advance Premium $

| FORMS AND ENDORSEMENTS | TOTAL ADVANCE PREMIUM |
| :-- | :-- |
| Forms and Endorsements applying to this policy and attached at time of issue:<br>Common Policy Conditions (GO-0026), Nuclear Energy Exclusion (GO-0027),<br>CG-0001 (07/98), GO-0006 (06/96), GO-0011 (06/96), GO-0012 (06/96),<br>GO-0019 (06/96), GO-0057 (06/97), GO-0064 (06/98), GO-0075 (06/02),<br>GO-0076 (03/01), GO-0078 (03/01), GO-0079 (03/01), GO-0084 (08/01),<br>CG-2010 (10/93), CG-2015 (11/88), CG-2135 (10/93), CG 2149 (10/93),<br>CG-2169 (01/02), CG-2243 (01/96). | $      49,500 |

Countersigned:

By _Donna Mc Govern_
**Assistant Vice President**
**Authorized Representative**

THESE DECLARATIONS AND THE COMMON POLICY DECLARATIONS, IF APPLICABLE, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

3/12/03 - pg

GO-0028 (Ed. 6/96)



# COMMON POLICY CONDITIONS

## All Coverage Forms included in this policy are subject to the following conditions.

**A. CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.
3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.
4. Notice of cancellation will state the effective date of cancellation. The policy period will end at 12:01 a.m. on that date.
5. If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. CHANGES**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. EXAMINATION OF YOUR BOOKS AND RECORDS**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. INSPECTIONS AND SURVEYS**

We have the right but are not obligated to:
1. Make inspections and surveys at any time;
2. Give you reports on the conditions we find; and
3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
1. Are safe or healthful; or
2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**E. PREMIUMS**

The first Named Insured shown in the Declarations:
1. Is responsible for the payment of all premiums; and
2. Will be the payee for any return premiums we pay.

**F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Stephen A Cohen
*Secretary*

Andrew S Frazin
*President*

*Includes copyrighted material of Insurance Services Office, Inc., with its permission.*
*Copyright, Insurance Services Office, Inc. 1985.*

05/14/2003 04:36 PM

 

### NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (BROAD FORM)
This endorsement modifies the provisions of this policy.

It is agreed that:

I.  This Policy does not apply:

  A.  Under any Liability Coverage, to **bodily injury** or **property damage**

    1.  with respect to which an Insured under this Policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its Limit of Liability; or

    2.  resulting from the **hazardous properties** of **nuclear material** and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

  B.  Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to **bodily injury** resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by an person or organization.

  C.  Under any Liability Coverage, to **bodily injury** or **property damage** resulting from the **hazardous properties** of **nuclear material**, if

    1.  the **nuclear material** (a) is at any **nuclear facility** owned by, or operated by or on behalf of, an Insured or (b) has been discharged or dispersed therefrom;

    2.  the **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

    3.  the **bodily injury** or **property damage** arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to **property damage** to such **nuclear facility** and any property thereat.

II.  As used in this endorsement:

"**hazardous properties**" include radioactive, toxic or explosive properties;

"**nuclear material**" means **source material**, **special nuclear material** or **byproduct material**;

"**source material**," "**special nuclear material**," and "**byproduct material**" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"**spent fuel**" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**;

"**waste**" means any waste material (1) containing by product material and (2) resulting from the operation by any person or organization of any **nuclear facility** included within the definition of **nuclear facility** under paragraph (a) or (b) thereof;

"**Nuclear facility**" means

(a)  any **nuclear reactor**,

(b)  any equipment or device designed or used (1) **separating the isotopes** of uranium or plutonium, (2) processing or utilizing **spent fuel**, or (3) handling, processing or packaging **waste**,

(c)  any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste**,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"**nuclear reactor**" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable materials;

"**property damage**" includes all forms of radioactive contamination of property.

*Includes copyrighted material of Insurance Services Office, with its permission.*
*Copyright, Insurance Service Office, Inc. 1985.*

GO-0027 (06/96)



CG 00 01 07 98

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II—Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V—Definitions.

## SECTION I—COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III—Limits Of Insurance; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments—Coverage A and B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      (2) The "bodily injury" or "property damage" occurs during the policy period.

   c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

   This insurance does not apply to:

   a. **Expected Or Intended Injury**

      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   b. **Contractual Liability**

      "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

      (1) That the insured would have in the absence of the contract or agreement; or

      (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

         (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

         (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

   c. **Liquor Liability**

      "Bodily injury" or "property damage" for which any insured may be held liable by reason of:



(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

  (a) Employment by the insured; or

  (b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

### f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

  (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

    (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

  (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

  (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

  (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other op-

erating fluids, or if such fuels, lu-
bricants or other operating fluids
are brought on or to the prem-
ises, site or location with the in-
tent that they be discharged, dis-
persed or released as part of the
operations being performed by
such insured, contractor or sub-
contractor;

(ii) "Bodily injury" or "property dam-
age" sustained within a building
and caused by the release of
gases, fumes or vapors from
materials brought into that build-
ing in connection with operations
being performed by you or on
your behalf by a contractor or
subcontractor; or

(iii) "Bodily injury" or "property dam-
age" arising out of heat, smoke or
fumes from a "hostile fire".

(e) At or from any premises, site or loca-
tion on which any insured or any
contractors or subcontractors working
directly or indirectly on any insured's
behalf are performing operations if
the operations are to test for,
monitor, clean up, remove, contain,
treat, detoxify or neutralize, or in any
way respond to, or assess the effects
of, "pollutants".

(2) Any loss, cost or expense arising out of
any:

(a) Request, demand, order or statutory
or regulatory requirement that any in-
sured or others test for, monitor,
clean up, remove, contain, treat, de-
toxify or neutralize, or in any way re-
spond to, or assess the effects of,
"pollutants"; or

(b) Claim or suit by or on behalf of a
governmental authority for damages
because of testing for, monitoring,
cleaning up, removing, containing,
treating, detoxifying or neutralizing,
or in any way responding to, or as-
sessing the effects of, "pollutants".

However, this paragraph does not apply
to liability for damages because of
"property damage" that the insured would
have in the absence of such request,
demand, order or statutory or regulatory
requirement, or such claim or "suit" by or
on behalf of a government authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising
out of the ownership, maintenance, use or
entrustment to others of any aircraft, "auto" or
watercraft owned or operated by or rented or
loaned to any insured. Use includes operation
and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises
you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or
property for a charge;

(3) Parking an "auto" on, or on the ways next
to, premises you own or rent, provided
the "auto" is not owned by or rented or
loaned to you or the insured;

(4) Liability assumed under any "insured con-
tract" for the ownership, maintenance or
use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" aris-
ing out of the operation of any of the
equipment listed in paragraph **f.(2)** or
**f.(3)** of the definition of "mobile equip-
ment".

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising
out of:

(1) The transportation of "mobile equipment"
by an "auto" owned or operated by or
rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or
while in practice for, or while being pre-
pared for, any prearranged racing, speed,
demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage" due to
war, whether or not declared, or any act or
condition incident to war. War includes civil
war, insurrection, rebellion or revolution. This
exclusion applies only to liability assumed
under a contract or agreement.

j. **Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon,
if the "property damage" arises out of any
part of those premises;

(3) Property loaned to you;

CL 137 (7-98)



(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III—Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III—Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III—Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.



No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments—Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

## 2. Exclusions

This insurance does not apply to:

a. "Personal and advertising injury":

   (1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

   (2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

   (3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

   (4) Arising out of a criminal act committed by or at the direction of any insured;

   (5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

   (6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

   (7) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

   (8) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

   (9) Committed by an insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions section; or

   (10) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

b. Any loss, cost or expense arising out of any:

   (1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   (2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

   (1) On premises you own or rent;

   (2) On ways next to premises you own or rent; or

   (3) Because of your operations;

   provided that:

   (1) The accident takes place in the "coverage territory" and during the policy period;

   (2) The expenses are incurred and reported to us within one year of the date of the accident; and

   (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

   (1) First aid administered at the time of an accident;

   (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

   (3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury"



are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS—COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   e. All costs taxed against the insured in the "suit".

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the

liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

   (1) Agrees in writing to:

      (a) Cooperate with us in the investigation, settlement or defense of the "suit";

      (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

      (c) Notify any other insurer whose coverage is available to the indemnitee; and

      (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

   (2) Provides us with written authorization to:

      (a) Obtain records and other information related to the "suit"; and

      (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2.b.(2) of Section I—Coverage A—Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damages" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary liti-

gation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in paragraph f. above, are no longer met.

## SECTION II—WHO IS AN INSURED

1. If you are designated in the Declarations as:

   **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   **a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

      **(1)** "Bodily injury" or "personal and advertising injury":

         **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

         **(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a

consequence of paragraph **(1)(a)** above;

      **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs **(1)(a)** or **(b)** above; or

      **(d)** Arising out of his or her providing or failing to provide professional health care services.

   **(2)** "Property damage" to property:

      **(a)** Owned, occupied or used by,

      **(b)** Rented to, in the, care, custody or control of, or over which physical control is being exercised for any purpose by

   you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   **b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

   **c.** Any person or organization having proper temporary custody of your property if you die, but only:

      **(1)** With respect to liability arising out of the maintenance or use of that property; and

      **(2)** Until your legal representative has been appointed.

   **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   **a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

   **b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

   No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III—LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal pa-

pers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to exclusion g. of Section I — Coverage A—Bodily Injury And Property Damage Liability.

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.



If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5. **Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. **Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

7. **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

8. **Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. **When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V—DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in a. above; or

(b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and

waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall

CL 137 (7-98)



be deemed to occur at the time of the "occurrence" that caused it.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Your product" means:

   a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      (1) You;

      (2) Others trading under your name; or

      (3) A person or organization whose business or assets you have acquired; and

   b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   "Your product" includes:

   a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   b. The providing of or failure to provide warnings or instructions.

   "Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

21. "Your work" means:

   a. Work or operations performed by you or on your behalf; and

   b. Materials, parts or equipment furnished in connection with such work or operations.

   "Your work" includes:

   a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

   b. The providing of or failure to provide warnings or instructions.

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## DEDUCTIBLE ENDORSEMENT
### DEFENSE COSTS AND EXPENSES CONTRIBUTING TO DEDUCTIBLE LIMIT

In consideration of the premium charged, it is agreed that such coverage as is afforded by this policy shall be in excess of $10,000 deductible each "occurrence," for any "occurrence" that would otherwise be covered on a primary basis.

Our obligation under the Bodily Injury Liability, Property Damage Liability, Personal Injury Liability and Advertising Injury Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amount stated above as applicable to such coverages. The limits of insurance applicable to each "occurrence" for such coverages will be reduced by the amount of such deductible. Aggregate limits for such coverages shall not be reduced by the application of such deductible amount.

The deductible amount stated above applies under Bodily Injury Liability, Property Damage Liability, Personal Injury Liability and Advertising Injury Liability Coverage combined to all damages because of "bodily injury," "property damage," "personal injury" and "advertising injury" as the result of any one "occurrence" or offense regardless of the number of persons or organizations who sustain damages because of that "occurrence."

All costs and expenses payable under the Supplementary Payments section of the Coverage Form shall contribute to the exhaustion of the stated deductible amount and such costs and expenses shall be entirely borne by the insured.

The terms of this insurance, including those with respect to:

    **(a)**    Our right and duty to defend any "suits" seeking damages; and

    **(b)**    Your duties in the event of an "occurrence," "claim," or "suit";

apply irrespective of the application of the deductible amount.

It is further agreed that the Company shall not be obligated to advance any amounts within the deductible that the insured may be legally obligated to pay. However, we may pay any part or all of the deductible amount to effect settlement of any "claim," "suit" or expense and upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

GO-0006 (06-96)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## EARNED PREMIUM AND COMPOSITE RATE

In consideration of Tudor Insurance Company's acceptance of this insurance, the Named Insured hereby agrees that the minimum earned premium(s) due for this policy shall be calculated in accordance with the following:

1.  The minimum earned premium due if this policy remains in effect for 90 days or less shall be twenty-five percent (25%) of the amount entered as ADVANCE PREMIUM on the Declarations page of this policy.

2.  In the event of cancellation of this policy by the Named Insured after this policy has been in effect for more than 90 days, the return premium due, if any, shall be computed at a rate equal to ninety percent (90%) of the pro-rata unearned policy premium, subject, however, to final premium adjustment in accordance with our rules, rates and the Premium Audit provisions of this policy.

3.  Failure by the Named Insured to remit premium payments when due shall be considered a request by the Named Insured for the Company to cancel this policy, and the minimum earned premium due the Company shall be computed in accordance with either paragraph 1 or 2 above, as the case may be.

4.  In the event of cancellation of this policy by the Company for reasons other than nonpayment of premium, the earned premium for this policy shall be computed on a pro-rata basis, subject, however, to final premium adjustment in accordance with our rules, rates and the Premium Audit provisions of this policy.

5.  The premium entered on the Declarations page of this policy as ADVANCE PREMIUM is a provisional premium only and is subject to adjustment in accordance with our rules, rates and the Premium Audit provisions of this policy. Premium adjustments effected as a result of premium audits will be done after the policy is no longer in effect but may be done by the Company while the policy is in effect. Premium Audit Adjustment calculations will be made to determine additional premiums only. The Named Insured agrees that there will be no downward adjustments of the ADVANCE PREMIUM resulting from the Premium Audit provisions of this policy.


6. The amount entered as ADVANCE PREMIUM on the Declarations page of this policy has been computed on a composite rate basis for both "bodily injury" and "property damage" as follows:

Exposure Basis   Estimated Exposure   x   Composite Rate   =   ADVANCE PREMIUM

Gross Sales      $3,500,000           X   $14.14           =   $49,500

If the Exposure Basis is Payroll, then the Composite Rate shall be applied per thousand dollars of Payroll. If the Exposure Basis is Gross Sales, then the Composite Rate shall be applied per thousand dollars of Gross Sales.

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## DEFINITION OF GROSS SALES

1.  **Definition**

    The gross amount charged by the named insured, concessionaires of the named insured or by others trading under the insured's name for:

    a.   All goods or products sold or distributed during the policy period;

    b.   Operations performed during the policy period; and

    c.   Rentals during the policy period;

2.  **Inclusions**

    The following items shall not be deducted from gross sales as determined above:

    a.   Foreign exchange discounts;

    b.   Freight allowance to customers;

    c.   Total sales of consigned goods and warehouse receipts;

    d.   Trade or cash discounts;

    e.   Bad debts; and

    f.   Repossession of items sold on installments (amount actually collected).

3.  **Exclusions**

    The following items shall be deducted from gross sales:

    a.   Sales or excise taxes which are collected and submitted to a governmental division;

    b.   Credits for repossessed merchandise and products returned.  Allowances for damaged and spoiled goods;

    c.   Finance charges for items sold on installments;

    d.   Freight charges on sales if freight is charged as a separate item on customer's invoice; and

    e.   Royalty income from patent rights or copyrights which are not product sales.

GO-0012 (06-96)

05/14/2003 04:37 PM



# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## SERVICE OF "SUIT" CLAUSE

It is agreed that service of process in any "suit" on this policy against Tudor Insurance Company may be made upon the highest one in authority bearing the title Commissioner, Director, or Superintendent of Insurance of the state or commonwealth wherein this policy is delivered or issued. The one in authority bearing the title Commissioner, Director, or Superintendent of Insurance of the state or commonwealth where this policy is delivered is hereby authorized and directed to accept service of process on behalf of this Company in any such "suit"; provided such Commissioner, Director, or Superintendent has a procedure for forwarding "suits" to insurance companies by registered or certified mail and agrees to abide by such procedure by mailing via certified mail all documents so served to Mr. Andrew Frazier, Tudor Insurance Company, 400 Parson's Pond Drive, Franklin Lakes, New Jersey 07417-2600.

It is further agreed that the Insured shall, by registered mail, send to Mr. Andrew Frazier, Tudor Insurance Company, 400 Parson's Pond Drive, Franklin Lakes, New Jersey 07417-2600, a copy of all documents relating to the service of process and "suit" as the Insured has delivered to the highest one in authority of the Insurance Department of the state in which the "suit" has been instituted.

GO-0019 (06-96)

05/14/2003 04:37 PM

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## SILICON DIOXIDE (SILICOSIS) EXCLUSION

In consideration of the premium charged, it is agreed that the following exclusion is added to the policy:

(1)   Any liability for "property damage," "personal injury," "advertising injury," "bodily injury," sickness, disease, occupational disease (including, buy not limited to "silicosis"), disability, shock, death, mental anguish and mental injury, which would not have occurred, in whole or in part, but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape, contact with or inhalation of "silicon dioxide" or any materials containing "silicon dioxide."

(2)   Any loss, cost or expense arising out of any "claim" or "suit" by or on behalf of a governmental authority for damages arising out of the monitoring of, clean-up of, removal of, containing of, treatment of, detoxification of, neutralization of, manufacture of, mining of, use of, sales of, installation of, distribution of, or exposure to "silicon dioxide."

"Silicon dioxide" means "silicon dioxide" or a chemical formulary which is a "silicon dioxide" derivative or which has a like formulation, structure or function.

"Silicosis" means a pneumoconiosis caused by inhalation of the dust or stone, sand or flint containing "silicon dioxide" characterized by generalized nodular fibrotic changes in the lungs, and, in more advanced stages, conglomerate fibrosis resulting in severe shortness of breath, cough and/or sputum.

All other terms and conditions remain unchanged.

GO-0057 (06-97)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## AIRCRAFT PRODUCTS AND GROUNDING EXCLUSION ENDORSEMENT

It is agreed that this policy shall not apply to any liability arising out of "Aircraft Products and Completed Operations" or reliance upon any representation or warranty made with respect thereto, nor to any liability arising out of the "Grounding" of any aircraft.

"Aircraft Products and Completed Operations" means: (1) Aircraft (including missiles or spacecraft and ground support or control equipment used therewith) and any other goods or products manufactured, sold, handled or distributed by any Insured for any services provided or recommended by any Insured or by others trading under his name for use in the manufacture, repair, operation, maintenance or use of any aircraft, and (2) any articles, furnished by any Insured and installed in aircraft or used in connection with aircraft or for spare parts for the aircraft, including ground handling tools and equipment, and also means training aids, instruction manuals, blueprints, engineering or other data, engineering or other advice, and labor relating to such aircraft or articles.

"Grounding" shall mean the withdrawal of one or more aircraft from the flight operations or the imposition of speed, passenger, or load restriction on such aircraft, by reason of the existence of or alleged or suspected existence of any defect, fault or condition in such aircraft of any part thereof sold, handled or distributed by any Insured or manufactured, assembled or processed by any other person or organization according to the specifications, plans, suggestions, orders, or drawings of any Insured whether such aircraft so withdrawn are owned or operated by the same or different persons, organization, or corporation.

GO-0064 (06-98)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## LEAD CONTAMINATION EXCLUSION
### (CONTRACTING)   (Except NH)

This insurance does not apply to:

(a)    "Bodily Injury" arising out of the ingestion, inhalation or absorption of lead in any form;

(b)    "Property Damage" arising from any form of lead;

(c)    Any loss, cost or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

(d)    Any loss, cost or expense arising out of any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

All other terms and conditions remain unchanged.

GO-0075 (06/02)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

### EXCLUSION FOR CERTAIN BUSINESS/MARKETING CONDUCT

In consideration of the premium charged, it is hereby understood and agreed that the insurance under this policy DOES NOT APPLY to claims and/or liability arising out of the following conduct in the course of any insured's business and/or marketing activities:

(1)    Any invasion of, infringement or intrusion upon, or interference with any person's right of privacy or publicity, including but not limited to presentation of such person in a false light, unwarranted or wrongful publicity, public disclosure of private facts, and commercial appropriation or use of such person's name, signature, photographic license, likeness and/or statements by or about him or her or attributed to him or her without such person's permission, and

(2)    Any misappropriation, infringement, or unauthorized use of any name, trademark, copyright, trade name, trade dress, service mark or service name, advertising idea, style of doing business, title, slogan, format, idea, character, character name, characterization, plot, musical composition, performance, logo, art work, graphic representation, photographic, or other similar concept, practice, or design.

All other terms and conditions remain unchanged.

GO-0076 (03/01)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## EMPLOYMENT RELATED PRACTICES EXCLUSION

This insurance does not apply to "Bodily Injury" arising out of any:

(1) Refusal to employ;

(2) Termination of employment;

(3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

(4) Consequential "bodily injury" as a result of (1) through (3) above.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

GO-0078 (03/01)

## ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

### ASBESTOS EXCLUSION

This insurance does not apply to any liability for "property damage," "bodily injury," sickness, disease, occupational disease, disability, shock, death, mental anguish and mental injury at any time arising out the manufacture of, mining of, use of, sales of, installation of, distribution of, removal of, encapsulation of or exposure to asbestos products, asbestos fibers or asbestos dust, or to any obligation of the insured to indemnify any party because of damages arising out of such "property damage," "bodily injury," sickness, disease, occupational disease, disability, shock, death, mental anguish or mental injury at any time as a result of the manufacture of, mining of, use of, sales of, installation of, distribution of, removal of, encapsulation of or exposure to asbestos products, asbestos fibers or asbestos dust.

GO-0079 (03/01)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## MOLD, SPORES AND/OR FUNGUS LIABILITY EXCLUSION

This insurance does not apply to "Bodily Injury," "Property Damage," "Personal Injury" or "Advertising Injury" for which any "named insured" or "insured" under this policy may be held liable arising out of the actual or threatened occurrence, growth, release, transmission, migration, dispersal or exposure to "Mold," "Spores" and/or "Fungus;"

(a)    including, but not limited to, "bodily injury," "property damage," "personal injury" or "advertising injury" resulting from any actual or threatened exposure to, inhalation, absorption or ingestion of, or physical contract with "Mold," "Spores" and/or "Fungus;"

(b)    including, but not limited to, "bodily injury," "property damage," "personal injury" or "advertising injury" resulting from any actual or threatened "Mold," "Spores" and/or "Fungus;" upon any real property or personal property; product or work, premises, site or location, or any other tangible property, of any "named insured" or "insured" or any other person(s) or organization(s), located anywhere in the world;

(c)    including, but not limited to, "bodily injury," "property damage," "personal injury" or "advertising injury" resulting from any loss, cost or expense for any testing, monitoring, clean-up, treatment or removal, or neutralization of "Mold," "Spores" and/or "Fungus;"

"Mold," "Spores" and/or "Fungus means any mold, spores and/or fungus of any type or nature whatsoever that can cause or threaten harm to any living organism (including human health or human welfare, or the health or welfare of any animal or plant) or can cause or threaten physical damage, deterioration, loss of use, and/or loss of value or marketability, to any tangible property whatsoever. This includes, but is not limited to, any type(s) of mold, spores and/or fungus that are harmful or potentially harmful to health or welfare (such as Stachbotrys and others), or that are damaging or potentially damaging to tangible property (such as wet or dry rot, mildew and others) or that can otherwise cause or threaten to cause "Bodily Injury," "Property Damage," "Personal Injury" or "Advertising Injury" of any kind whatsoever.

GO-0084 (08/01)

CL 690
(10-93)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

CG 20 10 10 93

# ADDITIONAL INSURED—OWNERS, LESSEES OR CONTRACTORS (FORM B)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective<br>February 20, 2003         12:01 A.M. standard time | Policy No.          GLO 000-3046 |
|---|---|
| Named Insured<br>Hoyt Corporation, et al. | Countersigned by |

(Authorized Representative)

**SCHEDULE**

**Name of Person or Organization:**

See Below

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

Any Person or organization that is an owner of Real Property or Personal Property on which you are performing operations, or a contractor on whose behalf you are performing operations, and only at the specific written request of such person or organization to you, wherein such request is made prior to commencement of operations, and for which a certificate of insurance naming such person or organization as additional insured is on file with Tudor Insurance Company.



Copyright, Insurance Services Office, Inc., 1992

CL 532
(11-88)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

CG 20 15 11 88

## ADDITIONAL INSURED—VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

Policy Number:

Name of Person or Organization (Vendor):

### GLO 000-3046

Your Products:

### All vendors of the Named Insured

### All products manufactured or sold by the Named Insured

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

1. The insurance afforded the vendor does not apply to:

   a. "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

   b. Any express warranty unauthorized by you;

   c. Any physical or chemical change in the product made intentionally by the vendor.

   d. Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

   e. Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business in connection with the distribution or sale of the products;

   f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

   g. Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

2. This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.



Copyright, Insurance Services Office, Inc., 1986, 1988

CL 683
(10-93)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

CG 21 35 10 93

## EXCLUSION—COVERAGE C—MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective<br>February 20, 2003        12:01 A.M. standard time | Policy No.          GLO 000-3046 |
|---|---|
| Named Insured<br>Hoyt Corporation, et al. | Countersigned by<br><br>(Authorized Representative) |

### SCHEDULE

**Description and Location of Premises or Classification:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule, coverage **C.** MEDICAL PAYMENTS (Section I) does not apply and none of the references to it in the Coverage Part apply.

The following is added to SUPPLEMENTARY PAYMENTS (Section I):

**8.** Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.



Copyright, Insurance Services Office, Inc., 1992

CL 669
(10-93)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

CG 21 49 10 93

## TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective February 20, 2003  12:01 A.M. standard time | Policy No.  GLO 000-3046 |
|---|---|
| Named Insured Hoyt Corporation, et al. | Countersigned by |

(Authorized Representative)

Exclusion **f.** under paragraph **2.**, Exclusions of COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I—Coverages) is replaced by the following:

This insurance does not apply to:

**f.** **(1)** "Bodily Injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.



Copyright, Insurance Services Office, Inc., 1992



COMMERCIAL GENERAL LIABILITY
CG 21 69 01 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAR OR TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion I. under Paragraph 2., **Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

2. **Exclusions**

This insurance does not apply to:

I. **War Or Terrorism**

"Bodily injury" or "property damage" arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

(4) "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

(1) The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions ; or

(2) Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

(a) Physical injury that involves a substantial risk of death; or

(b) Protracted and obvious physical disfigurement; or

(c) Protracted loss of or impairment of the function of a bodily member or organ; or

(3) The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

(4) The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or



(5) Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Paragraphs (1) and (2), immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

B. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

   2. Exclusions

   This insurance does not apply to:

   **War Or Terrorism**

   "Personal and advertising injury" arising, directly or indirectly, out of:

   (1) War, including undeclared or civil war; or

   (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   (3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

(4) "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury.

However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

(1) The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions ; or

(2) Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   (a) Physical injury that involves a substantial risk of death; or

   (b) Protracted and obvious physical disfigurement; or

   (c) Protracted loss of or impairment of the function of a bodily member or organ; or

(3) The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

(4) The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

© ISO Properties, Inc., 2001                CG 21 69 01 02



(5) Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Paragraphs (1) and (2), immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. Exclusion h. under Paragraph 2., Exclusions of Section I – Coverage C – Medical Payments does not apply.

D. The following definition is added to the Definitions Section:

"Terrorism" means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:

   a. Use or threat of force or violence; or

   b. Commission or threat of a dangerous act; or

   c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2. When one or both of the following applies:

   a. The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

   b. It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

 © ISO Properties, Inc., 2001

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

CG 22 43 01 96

# EXCLUSION—ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I—Coverages) and paragraph 2., Exclusions of COVERAGE B—PERSONAL AND ADVERTISING INJURY LIABILITY (Section I—Coverages):

This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2. Supervisory, inspection, architectural or engineering activities.



Copyright, Insurance Services Office, Inc., 1994

CL 843
(1-96)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

### GENERAL CHANGE ENDORSEMENT

Attaching to and forming a part of

| | | | |
|---|---|---|---|
| Policy # | GLO 000-3046 | Effective Date of Policy | February 20, 2003 |
| Endorsement # | 1 | Effective Date of Endorsement | February 20, 2003 |
| Named Insured | Hoyt Corporation, et al. | | |

| | | | |
|---|---|---|---|
| **Additional Premium** | **$ N/A** | **Return Premium** | **$ N/A** |

It is agreed the following change is made in this policy:

- ☐ Name of Assured is amended to read as shown below.
- ☐ Premium rate amended as shown below.
- ☐ Item(s) listed below added to schedule.
- ☐ Description of scheduled items amended as shown below.
- ☐ Location – Address of Insured amended to read as shown below.
- ☒ Policy conditions amended as shown below.
- ☐ Item(s) listed below deleted from schedule.
- ☐ Description of property insured corrected to read as shown below.

It is agreed that Form GO-38 is added to the policy.  (See attached).

All other terms and conditions of this policy remain unchanged.

GO-0039 (06/96)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

### NAMED INSURED ENDORSEMENT

In consideration of the premium charged, it is agreed that Section II – Who is an Insured of the Coverage Form is amended to include:

> Hoyt Corp.
> H. R. Hoyt, Inc.
> Forge Road Realty Trust
> Hoyt Manufacturing Corporation
> Westport Environmental System Limited Partnership
> Hoyt Environmental Corp.
> Westport Environmental Corp.
> Olinger Technologies

GO-0038 (06/96)

EXHIBIT B

## COMMERCIAL GENERAL LIABILITY POLICY

**No. GLO  000-3656**

GLO 000-3046

REPLACEMENT OF NUMBER

STOCK COMPANY



# TUDOR
## INSURANCE COMPANY
### KEENE, NEW HAMPSHIRE

400 PARSON'S POND DRIVE
FRANKLIN LAKES, NJ 07412-2600

## DECLARATIONS

**Named Insured** and Mailing Address: (No., Street, City, State, Zip Code)

**Hoyt Corporation**
**251 Forge Road**
**Westport, MA 02790**

The **named insured is**:

☐ Individual
☐ Partnership
☒ Corporation
☐ Other _____

Policy Period:  (Mo./Day/Yr.)

From                    to                    12:01 A.M., standard time at your mailing
                                             address shown above.

**February 20, 2004        February 20, 2005**

Business Description: Manufacturer of Commercial Washers & Dryers

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE
WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

### LIMITS OF INSURANCE

| | | |
|---|---|---|
| General Aggregate Limit (Other Than Products - Completed Operations) | $ | 2,000,000 |
| Products - Completed Operations Aggregate Limit | $ | 2,000,000 |
| Personal and Advertising Injury Limit | $ | 1,000,000 |
| Each Occurrence Limit | $ | 1,000,000 |
| Fire Damage Limit | $ | 50,000 Any One Fire |
| Medical Expense Limit | $ | EXCLUDED Any One Person |

### PREMIUM

| | | | Rate | | Advance Premium | |
|---|---|---|---|---|---|---|
| Classification | Code No. | Premium Basis | Pr/Co | All Other | Pr/Co | All Other |

See Earned Premium and Composite Rate Endorsement (GO-0011).

Advance Premium  $

### FORMS AND ENDORSEMENTS                    TOTAL ADVANCE PREMIUM

| Forms and Endorsements applying to this policy and attached at time of issue: | |
|---|---|
| Common Policy Conditions (GO-0026), Nuclear Energy Exclusion (GO-0027), GO-0006 (06/96), GO-0011 (06/96), GO-0012 (06/96), GO-0019 (06/96), GO-0038 (06/96), GO-0064 (06/98), GO-0075 (01/97), GO-0076 (03/01), GO-0078 (03/01), GO-0079 (03/01), GO-0084 (08/01), GO-0098 (11/03), CG-0001 (07/98), CG-2010 (10/93), CG-2015 (11/88), CG-2135 (10/93), CG 2149 (10/93), CG-2169 (01/02), CG-2173 (12/02), CG-2243 (01/96). | $    52,500 |

Countersigned:

By _Donna Mc Govern_
Assistant Vice President
Authorized Representative

THESE DECLARATIONS AND THE COMMON POLICY DECLARATIONS, IF APPLICABLE, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S)
AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

02/20/04  LR

GO-0028 (Ed. 6/96)

# COMMON POLICY CONDITIONS

## All Coverage Forms included in this policy are subject to the following conditions.

A. **CANCELLATION**
1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.
3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.
4. Notice of cancellation will state the effective date of cancellation. The policy period will end at 12:01 a.m. on that date.
5. If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
6. If notice is mailed, proof of mailing will be sufficient proof of notice.

B. **CHANGES**
This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

C. **EXAMINATION OF YOUR BOOKS AND RECORDS**
We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

D. **INSPECTIONS AND SURVEYS**
We have the right but are not obligated to:
1. Make inspections and surveys at any time;
2. Give you reports on the conditions we find; and
3. Recommend changes.
Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
1. Are safe or healthful; or
2. Comply with laws, regulations, codes or standards.
This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

E. **PREMIUMS**
The first Named Insured shown in the Declarations:
1. Is responsible for the payment of all premiums; and
2. Will be the payee for any return premiums we pay.

F. **TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**
Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.
If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

*Secretary*                              *President*

*Includes copyrighted material of Insurance Services Office, Inc., with its permission.*
*Copyright, Insurance Services Office, Inc. 1985.*

GO-0026 (06/96)

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (BROAD FORM)
This endorsement modifies the provisions of this policy.

It is agreed that:

I.  This Policy does not apply:

    A.  Under any Liability Coverage, to **bodily injury** or **property damage**

        1.  with respect to which an Insured under this Policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its Limit of Liability; or

        2.  resulting from the **hazardous properties** of **nuclear material** and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B.  Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to **bodily injury** resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by an person or organization.

    C.  Under any Liability Coverage, to **bodily injury** or **property damage** resulting from the **hazardous properties** of **nuclear material**, if

        1.  the **nuclear material** (a) is at any **nuclear facility** owned by, or operated by or on behalf of, an Insured or (b) has been discharged or dispersed therefrom;

        2.  the **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

        3.  the **bodily injury** or **property damage** arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to **property damage** to such **nuclear facility** and any property thereat.

II.  As used in this endorsement:

    **"hazardous properties"** include radioactive, toxic or explosive properties;

    **"nuclear material"** means **source material, special nuclear material** or **byproduct material**;

    **"source material," "special nuclear material,"** and **"byproduct material"** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

    **"spent fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**;

    **"waste"** means any waste material (1) containing **by product material** and (2) resulting from the operation by any person or organization of any **nuclear facility** included within the definition of **nuclear facility** under paragraph (a) or (b) thereof;

    **"Nuclear facility"** means

    (a)  any **nuclear reactor**,

    (b)  any equipment or device designed or used (1) **separating the isotopes** of uranium or plutonium, (2) processing or utilizing **spent fuel**, or (3) handling, processing or packaging **waste**,

    (c)  any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

    (d)  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste**, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

    **"nuclear reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable materials;

    **"property damage"** includes all forms of radioactive contamination of property.

*Includes copyrighted material of Insurance Services Office, with its permission.*
*Copyright, Insurance Service Office, Inc. 1985.*

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## DEDUCTIBLE ENDORSEMENT
### DEFENSE COSTS AND EXPENSES CONTRIBUTING TO DEDUCTIBLE LIMIT

In consideration of the premium charged, it is agreed that such coverage as is afforded by this policy shall be in excess of $10,000 deductible each "occurrence," for any "occurrence" that would otherwise be covered on a primary basis.

Our obligation under the Bodily Injury Liability, Property Damage Liability, Personal Injury Liability and Advertising Injury Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amount stated above as applicable to such coverages. The limits of insurance applicable to each "occurrence" for such coverages will be reduced by the amount of such deductible. Aggregate limits for such coverages shall not be reduced by the application of such deductible amount.

The deductible amount stated above applies under Bodily Injury Liability, Property Damage Liability, Personal Injury Liability and Advertising Injury Liability Coverage combined to all damages because of "bodily injury," "property damage," "personal injury" and "advertising injury" as the result of any one "occurrence" or offense regardless of the number of persons or organizations who sustain damages because of that "occurrence."

All costs and expenses payable under the Supplementary Payments section of the Coverage Form shall contribute to the exhaustion of the stated deductible amount and such costs and expenses shall be entirely borne by the insured.

The terms of this insurance, including those with respect to:

    **(a)**    Our right and duty to defend any "suits" seeking damages; and

    **(b)**    Your duties in the event of an "occurrence," "claim," or "suit";

apply irrespective of the application of the deductible amount.

It is further agreed that the Company shall not be obligated to advance any amounts within the deductible that the insured may be legally obligated to pay. However, we may pay any part or all of the deductible amount to effect settlement of any "claim," "suit" or expense and upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

GO-0006 (06-96)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## EARNED PREMIUM AND COMPOSITE RATE

In consideration of Tudor Insurance Company's acceptance of this insurance, the Named Insured hereby agrees that the minimum earned premium(s) due for this policy shall be calculated in accordance with the following:

1. The minimum earned premium due if this policy remains in effect for 90 days or less shall be twenty-five percent (25%) of the amount entered as ADVANCE PREMIUM on the Declarations page of this policy.

2. In the event of cancellation of this policy by the Named Insured after this policy has been in effect for more than 90 days, the return premium due, if any, shall be computed at a rate equal to ninety percent (90%) of the pro-rata unearned policy premium, subject, however, to final premium adjustment in accordance with our rules, rates and the Premium Audit provisions of this policy.

3. Failure by the Named Insured to remit premium payments when due shall be considered a request by the Named Insured for the Company to cancel this policy, and the minimum earned premium due the Company shall be computed in accordance with either paragraph 1 or 2 above, as the case may be.

4. In the event of cancellation of this policy by the Company for reasons other than nonpayment of premium, the earned premium for this policy shall be computed on a pro-rata basis, subject, however, to final premium adjustment in accordance with our rules, rates and the Premium Audit provisions of this policy.

5. The premium entered on the Declarations page of this policy as ADVANCE PREMIUM is a provisional premium only and is subject to adjustment in accordance with our rules, rates and the Premium Audit provisions of this policy. Premium adjustments effected as a result of premium audits will be done after the policy is no longer in effect but may be done by the Company while the policy is in effect. Premium Audit Adjustment calculations will be made to determine additional premiums only. The Named Insured agrees that there will be no downward adjustments of the ADVANCE PREMIUM resulting from the Premium Audit provisions of this policy.

GO-0011 (06/96)                   Page 1 of 2

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## SERVICE OF "SUIT" CLAUSE

It is agreed that service of process in any "suit" on this policy against Tudor Insurance Company may be made upon the highest one in authority bearing the title Commissioner, Director, or Superintendent of Insurance of the state or commonwealth wherein this policy is delivered or issued. The one in authority bearing the title Commissioner, Director, or Superintendent of Insurance of the state or commonwealth where this policy is delivered is hereby authorized and directed to accept service of process on behalf of this Company in any such "suit"; provided such Commissioner, Director, or Superintendent has a procedure for forwarding "suits" to insurance companies by registered or certified mail and agrees to abide by such procedure by mailing via certified mail all documents so served to Mr. Andrew Frazier, Tudor Insurance Company, 400 Parson's Pond Drive, Franklin Lakes, New Jersey 07417-2600.

It is further agreed that the Insured shall, by registered mail, send to Mr. Andrew Frazier, Tudor Insurance Company, 400 Parson's Pond Drive, Franklin Lakes, New Jersey 07417-2600, a copy of all documents relating to the service of process and "suit" as the Insured has delivered to the highest one in authority of the Insurance Department of the state in which the "suit" has been instituted.

GO-0019 (06-96)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## NAMED INSURED ENDORSEMENT

In consideration of the premium charged, it is agreed that Section II - Who is an Insured of the Coverage Form is amended to include:

> Hoyt Corp.
> H.R. Hoyt, Inc.
> Forge Road Realty Trust
> Hoyt Manufacturing Corporation
> Westport Environmental System Limited Partnership
> Olinger Technologies

GO-0038 (06/96)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## AIRCRAFT PRODUCTS AND GROUNDING EXCLUSION ENDORSEMENT

It is agreed that this policy shall not apply to any liability arising out of "Aircraft Products and Completed Operations" or reliance upon any representation or warranty made with respect thereto, nor to any liability arising out of the "Grounding" of any aircraft.

"Aircraft Products and Completed Operations" means: (1) Aircraft (including missiles or spacecraft and ground support or control equipment used therewith) and any other goods or products manufactured, sold, handled or distributed by any Insured for any services provided or recommended by any Insured or by others trading under his name for use in the manufacture, repair, operation, maintenance or use of any aircraft, and (2) any articles, furnished by any Insured and installed in aircraft or used in connection with aircraft or for spare parts for the aircraft, including ground handling tools and equipment, and also means training aids, instruction manuals, blueprints, engineering or other data, engineering or other advice, and labor relating to such aircraft or articles.

"Grounding" shall mean the withdrawal of one or more aircraft from the flight operations or the imposition of speed, passenger, or load restriction on such aircraft, by reason of the existence of or alleged or suspected existence of any defect, fault or condition in such aircraft of any part thereof sold, handled or distributed by any Insured or manufactured, assembled or processed by any other person or organization according to the specifications, plans, suggestions, orders, or drawings of any Insured whether such aircraft so withdrawn are owned or operated by the same or different persons, organization, or corporation.

GO-0064 (06-98)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## LEAD CONTAMINATION EXCLUSION
### (CONTRACTING)   (Except NH)

This insurance does not apply to:

(a)    "Bodily Injury" arising out of the ingestion, inhalation or absorption of lead in any form;

(b)    "Property Damage" arising from any form of lead;

(c)    Any loss, cost or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

(d)    Any loss, cost or expense arising out of any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

All other terms and conditions remain unchanged.

GO-0075 (06/02)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

### EXCLUSION FOR CERTAIN BUSINESS/MARKETING CONDUCT

In consideration of the premium charged, it is hereby understood and agreed that the insurance under this policy DOES NOT APPLY to claims and/or liability arising out of the following conduct in the course of any insured's business and/or marketing activities:

(1)　Any invasion of, infringement or intrusion upon, or interference with any person's right of privacy or publicity, including but not limited to presentation of such person in a false light, unwarranted or wrongful publicity, public disclosure of private facts, and commercial appropriation or use of such person's name, signature, photographic license, likeness and/or statements by or about him or her or attributed to him or her without such person's permission, and

(2)　Any misappropriation, infringement, or unauthorized use of any name, trademark, copyright, trade name, trade dress, service mark or service name, advertising idea, style of doing business, title, slogan, format, idea, character, character name, characterization, plot, musical composition, performance, logo, art work, graphic representation, photographic, or other similar concept, practice, or design.

All other terms and conditions remain unchanged.

GO-0076 (03/01)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## EMPLOYMENT RELATED PRACTICES EXCLUSION

This insurance does not apply to "Bodily Injury" arising out of any:

(1) Refusal to employ;

(2) Termination of employment;

(3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

(4) Consequential "bodily injury" as a result of (1) through (3) above.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

GO-0078 (03/01)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## ASBESTOS EXCLUSION

This insurance does not apply to any liability for "property damage," "bodily injury," sickness, disease, occupational disease, disability, shock, death, mental anguish and mental injury at any time arising out the manufacture of, mining of, use of, sales of, installation of, distribution of, removal of, encapsulation of or exposure to asbestos products, asbestos fibers or asbestos dust, or to any obligation of the insured to indemnify any party because of damages arising out of such "property damage," "bodily injury," sickness, disease, occupational disease, disability, shock, death, mental anguish or mental injury at any time as a result of the manufacture of, mining of, use of, sales of, installation of, distribution of, removal of, encapsulation of or exposure to asbestos products, asbestos fibers or asbestos dust.

GO-0079 (03/01)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## MOLD, SPORES AND/OR FUNGUS LIABILITY EXCLUSION

This insurance does not apply to "Bodily Injury," "Property Damage," "Personal Injury" or "Advertising Injury" for which any "named insured" or "insured" under this policy may be held liable arising out of the actual or threatened occurrence, growth, release, transmission, migration, dispersal or exposure to "Mold," "Spores" and/or "Fungus;"

(a)    including, but not limited to, "bodily injury," "property damage," "personal injury" or "advertising injury" resulting from any actual or threatened exposure to, inhalation, absorption or ingestion of, or physical contract with "Mold," "Spores" and/or "Fungus;"

(b)    including, but not limited to, "bodily injury," "property damage," "personal injury" or "advertising injury" resulting from any actual or threatened "Mold," "Spores" and/or "Fungus;" upon any real property or personal property, product or work, premises, site or location, or any other tangible property, of any "named insured" or "insured" or any other person(s) or organization(s), located anywhere in the world;

(c)    including, but not limited to, "bodily injury," "property damage," "personal injury" or "advertising injury" resulting from any loss, cost or expense for any testing, monitoring, clean-up, treatment or removal, or neutralization of "Mold," "Spores" and/or "Fungus;"

"Mold," "Spores" and/or "Fungus means any mold, spores and/or fungus of any type or nature whatsoever that can cause or threaten harm to any living organism (including human health or human welfare, or the health or welfare of any animal or plant) or can cause or threaten physical damage, deterioration, loss of use, and/or loss of value or marketability, to any tangible property whatsoever. This includes, but is not limited to, any type(s) of mold, spores and/or fungus that are harmful or potentially harmful to health or welfare (such as Stachbotrys and others), or that are damaging or potentially damaging to tangible property (such as wet or dry rot, mildew and others) or that can otherwise cause or threaten to cause "Bodily Injury," "Property Damage," "Personal Injury" or "Advertising Injury" of any kind whatsoever.

GO-0084 (08/01)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

### CRYSTALLINE SILICA EXCLUSION

This insurance does not apply to "bodily injury", "property damage", "personal injury", "advertising injury" or "medical payments" arising out of or related to any alleged, threatened or actual exposure to or inhalation of "crystalline silica", or arising out of or related to any alleged failure to prevent, limit or reduce exposure to or inhalation of "crystalline silica".

"Crystalline silica" means the mineral common in the earth's crust commonly referred to as free silica, respirable silica, or silicon dioxide ($SiO_2$), and includes alpha-quartz silica, cristobalite silica, or tridymite silica.

All other terms and conditions remain unchanged.

GO-0098 (11/03)

CG 00 01 07 98

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II—Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V—Definitions.

## SECTION I—COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section III—Limits Of Insurance; and

    **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments—Coverage A and B.

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

    **(2)** The "bodily injury" or "property damage" occurs during the policy period.

  **c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

  This insurance does not apply to:

  **a. Expected Or Intended Injury**

    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

  **b. Contractual Liability**

    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

    **(1)** That the insured would have in the absence of the contract or agreement; or

    **(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

      **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

      **(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

  **c. Liquor Liability**

    "Bodily injury" or "property damage" for which any insured may be held liable by reason of:



Copyright, Insurance Services Office, Inc., 1997



**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

   **(a)** Employment by the insured; or

   **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

   **(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

     **(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

     **(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

     **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

   **(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

   **(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

   **(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

     **(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other op-

CL 137 (7-98)



erating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a government authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

CL 137 (7-98)

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III—Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III—Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III—Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.



No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments—Coverages A and B.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

This insurance does not apply to:

**a.** "Personal and advertising injury":

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

(2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(4) Arising out of a criminal act committed by or at the direction of any insured;

(5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

(6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

(7) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

(8) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

(9) Committed by an insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions section; or

(10) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**b.** Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**COVERAGE C MEDICAL PAYMENTS**

1. **Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

We will not pay expenses for "bodily injury":

**a.** To any insured.

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury"

are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS—COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   e. All costs taxed against the insured in the "suit".

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the

liability of the indemnitee in a contract or agreement that is an "insured contract";

   b. This insurance applies to such liability assumed by the insured;

   c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   f. The indemnitee:

      (1) Agrees in writing to:

         (a) Cooperate with us in the investigation, settlement or defense of the "suit";

         (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

         (c) Notify any other insurer whose coverage is available to the indemnitee; and

         (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

      (2) Provides us with written authorization to:

         (a) Obtain records and other information related to the "suit"; and

         (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2.b.(2) of Section I—Coverage A—Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damages" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary liti-

gation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in paragraph **f.** above, are no longer met.

## SECTION II—WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an insured:

**a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a

consequence of paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the, care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

05/14/2003 04:36 PM

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

   No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III—LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal pa-

05/14/2003 04:36 PM

pers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

b. **Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or

similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to exclusion **g.** of Section I — Coverage A—Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

CL 137 (7-98)



If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

  **a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

  **b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

  **c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

  **a.** The statements in the Declarations are accurate and complete;

  **b.** Those statements are based upon representations you made to us; and

  **c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

  **a.** As if each Named Insured were the only Named Insured; and

  **b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V—DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

  **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

  **b.** International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in **a.** above; or

  **c.** All parts of the world if:

    **(1)** The injury or damage arises out of:

      **(a)** Goods or products made or sold by you in the territory described in **a.** above; or

      **(b)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

    **(2)** The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

CL 137 (7-98)

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

CL 137 (7-98)



(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall




be deemed to occur at the time of the "occurrence" that caused it.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

  a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

  b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Your product" means:

  a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   (1) You;

   (2) Others trading under your name; or

   (3) A person or organization whose business or assets you have acquired; and

  b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

  a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

  b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

21. "Your work" means:

  a. Work or operations performed by you or on your behalf; and

  b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

  a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

  b. The providing of or failure to provide warnings or instructions.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

CG 20 10 10 93

## ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS (FORM B)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective | Policy No. |
|---|---|
| February 20, 2004 | GLO 000-3656 |
| Named Insured | Countersigned by |
| Hoyt Corporation | |

**SCHEDULE**

**Name of Person or Organization:**

See Below

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

Any Person or organization that is an owner of Real Property or Personal Property on which you are performing operations, or a contractor on whose behalf you are performing operations, and only at the specific written request of such person or organization to you, wherein such request is made prior to commencement of operations, and for which a certificate of insurance naming such person or organization as additional insured is on file with Tudor Insurance Company.

Copyright, Insurance Services Office, Inc., 1992       ☐

POLICY NUMBER:                                   **COMMERCIAL GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

**Name of Person or Organization (Vendor):** All vendors of the named insured.

**Your Products:**
                           All products manufactured or sold by the Named Insured.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

1. The insurance afforded the vendor does not apply to:

   a. "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

   b. Any express warranty unauthorized by you;

   c. Any physical or chemical change in the product made intentionally by the vendor;

   d. Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

   e. Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

   f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

   g. Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

2. This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

        Copyright, Insurance Services Office, Inc., 1986, 1988        **Page 1 of 1**        □

POLICY NUMBER:                                              **COMMERCIAL GENERAL LIABILITY**
                                                           **CG 21 35 10 93**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – COVERAGE C – MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective | Policy No. |
|---|---|
| FEbruary 20, 2004 | GLO 000-3656 |
| Named Insured | Countersigned by |
| Hoyt Corporation | |

**SCHEDULE**

**Description and Location of Premises or Classification:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule, Coverage C. MEDICAL PAYMENTS (Section I) does not apply and none of the references to it in the Coverage Part apply.

The following is added to SUPPLEMENTARY PAYMENTS (Section I):

**8.** Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

COMMERCIAL GENERAL LIABILITY
CG 21 49 10 93

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective | Policy No. |
|---|---|
| February 20, 2004 | GLO 000-3656 |
| Named Insured | Countersigned by |
| Hoyt Corporation | |

Exclusion **f.** under paragraph **2.**, Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** – Coverages) is replaced by the following:

This insurance does not apply to:

**f.(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste.  Waste includes material to be recycled, reconditioned or reclaimed.

COMMERCIAL GENERAL LIABILITY
CG 21 69 01 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAR OR TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **i.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**i. War Or Terrorism**

"Bodily injury" or "property damage" arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

**(4)** "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

**(1)** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions ; or

**(2)** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

**(a)** Physical injury that involves a substantial risk of death; or

**(b)** Protracted and obvious physical disfigurement; or

**(c)** Protracted loss of or impairment of the function of a bodily member or organ; or

**(3)** The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**(4)** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**(5)** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Paragraphs **(1)** and **(2)**, immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I — Coverage B — Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**War Or Terrorism**

"Personal and advertising injury" arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

**(4)** "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury.

However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

**(1)** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions ; or

**(2)** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

**(a)** Physical injury that involves a substantial risk of death; or

**(b)** Protracted and obvious physical disfigurement; or

**(c)** Protracted loss of or impairment of the function of a bodily member or organ; or

**(3)** The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**(4)** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

© ISO Properties, Inc., 2001

CG 21 69 01 02    □

**(5)** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Paragraphs **(1)** and **(2),** immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** Exclusion **h.** under Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** does not apply.

**D.** The following definition is added to the **Definitions** Section:

"Terrorism" means activities against persons, organizations or property of any nature:

**1.** That involve the following or preparation for the following:

    **a.** Use or threat of force or violence; or

    **b.** Commission or threat of a dangerous act; or

    **c.** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

**2.** When one or both of the following applies:

    **a.** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

    **b.** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

COMMERCIAL GENERAL LIABILITY
CG 21 73 12 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of "a certified act of terrorism".

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

**a.** The act resulted in aggregate losses in excess of $5 million; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**COMMERCIAL GENERAL LIABILITY**
**CG 22 43 01 96**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to paragraph **2.,** Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages) and paragraph **2.,** Exclusions of COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY (Section I – Coverages):

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

**1.** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

**2.** Supervisory, inspection, architectural or engineering activities.

CG 22 43 01 96          Copyright, Insurance Services Office, Inc., 1994          **Page 1 of 1**   ☐

EXHIBIT C

SUPREME COURT OF THE STATE OF NEW
YORK COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MINNIE MASSUCCI AND PETER MASSUCCI
Plaintiff,

Index No.
**VERIFIED**
**COMPLAINT**

-against-

A.W. CHESTERTON COMPANY;
ALBANY FELT COMPANY, INC. (Individually
    and as Successor to ALBANY
    INTERNATIONAL CORP.);
ALBANY INTERNATIONAL CORP.;
ALLIANCE LAUNDRY SYSTEMS LLC;
AMERICAN BILTRITE, INC.;
AMERICAN LAUNDRY MACHINERY, INC.;
ARMSTRONG INTERNATIONAL, INC.
    (Individually and as Successor to
    ARMSTRONG MACHINE WORKS);
BERGPARMA USA, LLC;
BONDEX INTERNATIONAL, INC.;
CARRIER CORPORATION;
CELITE CORPORATION;
CINTAS CORPORATION;
CISSELL MANUFACTURING COMPANY;
COLUMBIA BOILER COMPANY OF
    POTTSTOWN;
CONNELL LIMITED PARTNERSHIP
    (Individually and as Successor to YUBA
    INDUSTRIES, INC.);
CRANE COMPANY (Individually and as
    Successor to JENKINS BROS., WEINMAN
    PUMP MANUFACTURING COMPANY,
    PACIFIC STEEL BOILER CORPORATION
    AND THATCHER BOILER);
CRANE PUMPS & SYSTEMS;
DAYTON ELECTRIC MFG. CO.;
DETREX CORPORATION;
ENPRO INDUSTRIES, INC. (Individually and as
    Successor to FAIRBANKS MORSE, ENGINE
    DIVISION AND QUINCY COMPRESSOR);
F.H. BONN COMPANY;
FORENTA, L.P.;
FULTON BOILER WORKS, INC.;
GENERAL ELECTRIC COMPANY;
GEORGIA PACIFIC CORPORATION;
GOODYEAR TIRE & RUBBER COMPANY;

GOULDS PUMPS, INCORPORATED;
HERCULES CHEMICAL CO., INC.;
HOFFMAN/NEW YORKER, INC.;
HONEYWELL INC. (Individually and as
    Successor to THE RUST ENGINEERING
    COMPANY, ALLIED SIGNAL, BENDIX
    CORPORATION AND EBASCO
    SERVICES, INC.);
HOYT  CORPORATION;
HOYT CORPORATION;
HUEBSCH LAUNDRY COMPANY;
IMO INDUSTRIES, INC. (Individually and as
    Successor to DELAVAL TURBINE,
    TRANSAMERICA DELAVAL AND IMO
    DELAVAL);
INGERSOLL-RAND COMPANY (Individually
    and as Successor to ALDRICH PUMP
    COMPANY AND TERRY STEAM
    TURBINE COMPANY);
KAESER COMPRESSORS, INC.;
MECHANICS LAUNDRY & SUPPLY INC. OF
    INDIANA;
MILWAUKEE VALVE COMPANY;
MIRACLEAN, INC.;
PELLERIN MILNOR CORPORATION;
PENTAIR PUMP GROUP, INC.;
PFIZER INC.;
QUALITEX COMPANY;
QUALITEX-DIVISION OF MECHANICS
    LAUNDRY & SUPPLY, INC.;
QUIGLEY CO., INC.;
R.V. DAVIES, INC.;
RESILLO PRESS PAD COMPANY;
RHEEM MANUFACTURING COMPANY
    (RUUD WATER HEATER DIVISION);
SPIRAX SARCO, INC. (Individually and as
    Successor to SARCO COMPANY, INC.);
THE JAMES LEFFEL & CO.;
TINGUE, BROWN AND CO.;
TURBO SERVICES, INC.;
UNION CARBIDE CORPORATION;
UNIPRESS CORPORATION;
UNITED BRASS WORKS, INC.;
UNITED GILSONITE LABORATORIES;
VIACOM, INC. (Individually and as Successor to
    CBS CORPORATION (BY MERGER)

F/K/A WESTINGHOUSE ELECTRIC
      CORPORATION);
WEST SIDE CORP.;
YARWAY CORPORATION;
YORK INDUSTRIES, INC.;
ZELLERMAYER SUPPLY CORP.;

           **Defendants.**

------------------------------------- x

## COMPLAINT

1) Plaintiffs MINNIE MASSUCCI (hereinafter referred to as "plaintiff") and PETER MASSUCCI (hereinafter referred to as "plaintiff/spouse") are husband and wife.

2) Each of the defendants named in the caption above has conducted business in the City and State of New York and has produced, manufactured, specified, supplied, installed or distributed asbestos and/or asbestos products with the reasonable expectation that such products would be used or consumed in this state, which products were so used or consumed, and/or has committed the tortious acts set forth below in this state.

3) Each of the defendants named in the caption above has manufactured, specified, supplied, sold, distributed and/or installed asbestos containing products to which the plaintiff was exposed, or was a contractor at a location where the plaintiff was exposed to asbestos, or manufactured, sold and/or installed equipment which had asbestos components or specified such components for operation, or owned or operated jobsites where asbestos containing products or equipment were used and where the plaintiff was thereby exposed to asbestos.

4) If it is deemed that Article 16 of the CPLR applies to this action, then the plaintiffs assert that this action falls within one or more of the exceptions set forth in CPLR 1602, including, but not limited to, that for cases where a person is found liable for causing a claimant's injury by having unlawfully released into the environment a substance hazardous to public health, safety or the environment; and that for parties found to have acted knowingly or intentionally and in concert to cause the acts or omissions upon which liability is based.

5) The plaintiff, in the course of plaintiff's employment, worked with and/or in the vicinity of asbestos containing products and equipment with asbestos containing components, which products and components gave off airborne asbestos fibers, which the plaintiff was thereby forced to inhale. Plaintiff sustained exposure including while working with her husband at his dry-cleaning business from approximately 1950-1977 and while working with her husband performing home renovations, among other exposures.

6) Upon information and belief, the named defendants manufactured, designed, sold, supplied, distributed, relabeled, commingled, applied and/or installed those asbestos

containing products and/or equipment with asbestos containing components to which the plaintiff was exposed during plaintiff's employment.

7)   Defendants, acting in concert, failed to warn the plaintiff and those similarly situated, of the known dangers and hazards of using their asbestos containing products.  This concert of action was achieved by the defendants providing substantial assistance and encouragement to one another in their wrongful course of conduct, and/or by expressly or impliedly agreeing not to warn the plaintiff and others similarly situated, of the hazards of said asbestos containing products.

8)   The inhalation of asbestos fibers is inherently dangerous, in that it proximately causes mesothelioma, lung cancer, asbestosis, pleural scarring and other severe diseases. Plaintiff, Minnie Massucci, was diagnosed with Mesothelioma on 6/26/2004.

## FIRST CAUSE OF ACTION

Paragraphs 1 through 8 are incorporated herein as if set forth in full.

9)   The employer or employers of the plaintiff, were engaged in various businesses in which they bought and/or installed asbestos products and materials.

10) The plaintiff was exposed to various asbestos containing products including while working with her husband at his dry- cleaning business from approximately 1950-1977 and while working with her husband performing home renovations, among other exposures.  Plaintiff was exposed to asbestos as described in paragraph 5.

11) During the period of time set forth above, the plaintiff was exposed to and did inhale and/or ingest asbestos dust, fibers, and particles, which dust, fibers, and particles came from the asbestos products which were contracted for, mined, milled, processed, manufactured, designed, tested, assembled, fashioned, fabricated, packaged, supplied, distributed, delivered, marketed and/or sold by the defendants.

12) Upon information and belief, the defendants, through their agents and employees, mined, processed, manufactured, designed, tested and/or packaged various asbestos-containing products, and supplied, distributed, delivered, marketed and/or sold said asbestos-containing products to the employer(s) of the plaintiff, or to others working at the various job sites in New York where the plaintiff was employed, or to third persons who, in turn, delivered and sold such products and materials to such employers or to others working at such job sites for use by employees, including the plaintiff.

13)  At all relevant times that the plaintiff was working, he was exposed to asbestos materials and products which, as part of plaintiff's employment, he was forced to come into contact with and breathe, inhale, and ingest asbestos fibers and particles coming from said asbestos products and materials.

14) At all times pertinent hereto, defendants were engaged in the business of contracting for, mining, milling, processing, manufacturing, designing, testing, assembling, fashioning, fabricating, packaging, supplying, distributing, delivering, marketing, selling and/or installing asbestos and asbestos products.

15) At all times pertinent hereto, the asbestos products contracted for, mined, milled, processed, manufactured, designed, tested, assembled, fashioned, fabricated, packaged, supplied, distributed, delivered, marketed, sold and/or installed by the defendants reached the plaintiff without any substantial change in their condition from the time they left the custody and control of the defendants.

16) The foregoing asbestos products and equipment with asbestos-containing components were defective in one or more of the following ways:

   a)  in that they were inherently dangerous to those who used, handled, came in contact with and/or inhaled said products and materials;

   b)  in that they failed to carry proper, adequate and correct warnings and information concerning the dangers of said products;

   c)  in that they lacked proper safety precautions to be observed by users, handlers and persons, including the plaintiff who would reasonably and foreseeably come into contact with the said products and materials;

   d)  in that they were packaged, bagged, boxed and/or supplied to the plaintiffs' decedent in packing, bagging, boxes or other containers that were inadequate and/or improper;

   e)  in that the products were delivered to and reached the plaintiff without adequate or proper handling instructions, face masks and/or respirators;

   f)  in that any warnings, information and/or safety instructions said products may have carried were improper and inadequate in that they failed to adequately and reasonably apprise users, handlers and persons coming into contact with the said products and materials, including the plaintiff, of the full scope and danger to their health of contact with asbestos products and materials, including the risk of cancer;

   g)  in that the said asbestos products and materials were not of merchantable quality; and

   h)  in that the said asbestos products and materials were not fit and safe for their known and intended purposes and uses.

17) As a result of the above, the plaintiff was caused to sustain permanent injuries caused by plaintiff's coming into contact with breathing, inhaling and ingesting asbestos fibers. The injuries and diseases from which the plaintiff is suffering will continue to cause the plaintiff to suffer pain and suffering, mental anxiety, distress of mind, emotional trauma and mental anguish.

18) The disease, diseases or injuries from which the plaintiff suffers were directly and proximately caused by plaintiff's exposure to asbestos and asbestos products which were mined, milled, manufactured, designed, assembled, fabricated, supplied, constructed, processed, packaged, distributed, delivered, purchased, sold and/or installed by the defendants.

19) As a result thereof, the plaintiff's life span may have been shortened and plaintiff's capacity to carry on life's activities has been impaired along with plaintiff's capacity to enjoy life and family.

20) As a result of said illness, the plaintiff has been obligated to incur expenses for medical treatment, x-rays and in the future will be obliged to incur further expenses for such purposes.

21) As a further result of said illness, the plaintiff's earning capacity may be impaired in the future.

22) The defendants knew or should have known that the asbestos products and materials were inherently dangerous to those who used, handled or came in contact with said products and materials.

23) The defendants failed to provide proper, adequate and correct warnings and information concerning the dangers of the products and materials to persons using, handling, or coming into contact therewith.

24) The defendants failed to provide proper, adequate and correct warnings and instruction of safety precautions to be observed by users, handlers and persons, including the plaintiff, who would reasonably and foreseeably come into contact with the said products and materials.

25) Any warnings, information and/or instruction of safety precautions were improper and inadequate in that, among other things, they failed to adequately and reasonably apprise users, handlers and persons coming into contact with the said products and materials, including the plaintiff, of the full scope and danger to their health of contact with asbestos products and materials, including the risk of cancer or mesothelioma.

26) The defendants have been possessed of medical and scientific data, studies and reports before 1929, which information clearly indicated that asbestos and asbestos-containing products were hazardous to the health and safety of the plaintiff and other human beings.

27) The defendants, during the 1930's, 1940's, 1950's and 1960's became possessed of voluminous medical and scientific data, studies and reports, which information conclusively established that asbestos and asbestos-containing products were hazardous to the health and safety of the plaintiff and all humans exposed to the products. Defendants were members of organizations like the National Safety Council which widely disseminated information about asbestos disease to its members, beginning in the 1930's.

28) The defendants have since the 1930's had numerous workers' compensation claims filed against them in this state and many other states by employees or former employees alleging asbestos related pneumoconiosis, going back to the 1930's. This State and other states provided compensation for individuals with asbestos related injuries under workers' compensation laws beginning in the 1930's.

29) The defendants, since the 1920's, have consistently failed to acknowledge, publish, or in any way advise plaintiff of studies and reports known throughout the industry, including studies conducted by or on behalf of various defendants in the asbestos industry.

30) Notwithstanding that the defendants possessed the foregoing information, the defendants wrongfully contracted for, mined, milled, processed, manufactured, designed, specified, tested, assembled, fashioned, fabricated, packaged, supplied, distributed,

delivered, installed, marketed, and/or sold asbestos products and materials to the plaintiff, plaintiff's employer(s) and/or to others working at the various job sites and places of employment of the plaintiff and/or the defendants installed, used and/or applied such products and equipment so as to expose the plaintiff to asbestos, and said defendants failed to render proper, adequate and correct warnings, advice, instruction and information and so acted in a grossly negligent, malicious, willful and wanton manner, and failed to use reasonable care under all circumstances, and wrongfully acted in other respects.

31) It was the continuing duty of the defendants to advise and warn purchasers, consumers, and users, and all prior purchasers, consumers, and users, of all dangers, characteristics, potentialities and/or defects discovered subsequent to their initial marketing or sale of said asbestos and asbestos products.

32) The defendants breached these duties by:

a) failing to warn the plaintiff of the dangers, characteristics, and/or potentialities of the product or products when they knew or should have known that the exposure to the product(s) would cause disease and injury;

b) failing to warn the plaintiff of the dangers to which he was exposed when they knew or should have known of the dangers;

c) failing to exercise reasonable care to warn the plaintiff of what would be safe, sufficient, and properly protective clothing, equipment, and appliances when working with, near or during exposure to asbestos and asbestos products;

d) in that they were packaged, bagged, boxed, and/or supplied to the plaintiff in packaging, bagging, boxes or other containers that were inadequate and/or improper;

e) in that the products were delivered to and reached the plaintiff without adequate or proper handling instructions, face masks and/or respirators;

f) failing to test the asbestos and asbestos products in order to ascertain the extent of dangers involved upon exposure;

g) failing to conduct such research that should have been conducted in the exercise of reasonable care in order to ascertain the dangers involved upon exposure;

h) failing to remove the product or products from the market when the defendant corporations knew or should have known of the hazards of exposure to asbestos and asbestos products;

i) failing upon discovery of the dangers, hazards, and potentialities of exposure to asbestos to adequately warn and apprise the plaintiff of the dangers, hazards, and potentialities discovered; and

j) generally using unreasonable, careless, and negligent conduct in the contracting for, mining, milling, processing, manufacturing, designing, testing, assembling, fashioning, fabricating, packaging, supplying, distributing, delivering, marketing, and/or selling of their asbestos and asbestos products.

33) The acts and omissions set forth above constitute misconduct that is intentional, willful, and reckless.

34) As a direct and proximate result of the defendant's misconduct hereinbefore set forth, the plaintiff contracted the diseases and injuries set forth in paragraph 8.

**WHEREFORE**, the plaintiff claims:

Compensatory damages in the amount of $20,000,000.00; and Punitive damages in the amount of $20,000,000.00.

## SECOND CAUSE OF ACTION

Paragraphs 1 through 34 are incorporated herein as if set forth in full.

35) The plaintiff was a foreseeable user and consumer of the defendants' asbestos and asbestos products.

36) The defendants owed the plaintiff a duty of reasonable care to avoid causing him harm from exposure to their products.

37) The defendants breached their duty in the numerous and various manner set forth above.

38) The defendants' negligence directly and proximately caused the plaintiff's asbestos disease and other lawful damages set forth above.

**WHEREFORE**, the plaintiff claims:

Compensatory damages in the amount of $20,000,000.00; and Punitive damages in the amount of $20,000,000.00.

## THIRD CAUSE OF ACTION

Paragraphs 1 through 38 are incorporated herein as if set forth in full.

39) The asbestos containing products hereinbefore described reached the plaintiff in a condition substantially unchanged from when they left the custody and control of the defendants, and were used by the plaintiff, and/or his coworkers in the manner intended by the defendants.

40) The defendants are, therefore, strictly liable to the plaintiff in accordance with Section 402A of the Restatement (Second) of Torts.

**WHEREFORE**, the plaintiff claims:

Compensatory damages in the amount of $20,000,000.00; and Punitive damages in the amount of $20,000,000.00.

## FOURTH CAUSE OF ACTION

The plaintiff, PETER MASSUCCI, spouse of the plaintiff, MINNIE MASSUCCI, hereby realleges and incorporates by reference to paragraphs 1 through 40 as if realleged and set forth in full.

41) As a direct and proximate result of the foregoing acts of the defendants, the plaintiff/spouse, PETER MASSUCCI, has suffered and will continue to suffer great pain and mental anguish by virtue of her loss of impairment of her husband's services, protection, care and assistance, society, companionship, affection, love, comfort, support, guidance and kindly offices and advice, and other benefits of the marital relationship.

WHEREFORE, the plaintiff claims:

Compensatory damages in the amount of $5,000,000.00.

WHEREFORE, Plaintiff demands judgment against the defendants in the First Cause of Action in the sum of Twenty Million ($20,000,000.00) Dollars in Compensatory Damages and Twenty Million ($20,000,000.00) Dollars in Punitive Damages; in the Second Cause of Action in the sum of Twenty Million ($20,000,000.00) Dollars in Compensatory Damages and Twenty Million ($20,000,000.00) Dollars in Punitive Damages; in the Third Cause of Action in the sum of Twenty Million ($20,000,000.00) Dollars in Compensatory Damages and Twenty Million ($20,000,000.00) Dollars in Punitive Damages; in the Fourth Cause of Action in the sum of Five Million ($5,000,000.00) Dollars in Compensatory Damages.

Dated at New York, New York, this <u>15 October 2004</u>.

Yours, etc.

Mark G. Strauss, Esq.
EARLY & STRAUSS, L.L.C.
Attorney for Plaintiffs
360 Lexington Avenue, 20th Floor
New York  NY  10017
212.986.2233

Mark G. Strauss, Esq.

## ATTORNEY'S VERIFICATION

The undersigned, an attorney admitted to practice in the Courts of the State of New York, shows that:

Affirmant is associated with the attorney of record for plaintiff in the within action; Affirmant has read the foregoing VERIFIED COMPLAINT and knows the contents thereof to be true to Affirmant's own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters, Affirmant believes those matters to be true.

The grounds of Affirmant's belief as to all matters not stated upon his knowledge are based upon information contained in the file maintained in Affirmant's office.

This verification is made by Affirmant and not by the plaintiff because the plaintiffs reside outside the county wherein Affirmant maintains his office.

The undersigned affirms that the foregoing statements are true under the penalties of perjury.

_____
Mark G. Strauss, Esq.

Dated: October 15, 2004

_____
Mark G. Strauss, Esq.

NEW YORK
COUNTY CLERK'S OFFICE

OCT 15 2004

NOT COMPARED
WITH COPY FILED

EARLY, LUDWICK, SWEENEY & STRAUSS
An Association of Professional L.L.C.s
EARLY & STRAUSS, L.L.C.
360 LEXINGTON AVENUE • 20th FLOOR